In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00065-CR


______________________________




FREDRICK LEE SANDERS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the Second Judicial District Court


Cherokee County, Texas


Trial Court No. 15912




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 In 2005, Fredrick Lee Sanders entered a plea of guilty in Cherokee County to the offense of
possession of a controlled substance (cocaine) (1) and was sentenced to two years' confinement in a
state-jail facility. However, pursuant to a plea agreement, the trial court deferred a finding of guilt
and placed Sanders on community supervision for seven years. The State later filed a motion asking
the trial court to adjudicate Sanders guilty and revoke his community supervision. After a hearing
on that motion, the trial court found Sanders violated the terms of his community supervision by
committing the offense of criminal trespass and by failing to report to his supervising officer; the
trial court then adjudicated Sanders guilty and sentenced him to two years' incarceration. Sanders
then perfected his appeal of that order to the Twelfth Court of Appeals; the Texas Supreme Court
transferred his appeal to this Court pursuant to the Texas Supreme Court's docket equalization
program. See Tex. Gov't Code Ann. § 73.001 (Vernon 2005).

 Sanders's complaint on appeal is that the trial court erroneously considered his failure to
testify at the revocation hearing and used that failure to testify in determining his sentence. After
presentation of evidence and argument by counsel, the trial court stated:

 It may be the two years in state jail is not going to address the drug issue as SAFPF (2)
would. [Defendant] hadn't indicated any desire to go to SAFPF which would be an
indication that he wanted some help in that regard. But there comes a time with a
history like this and new offenses, not complying with probation, that you have got
to do something.


Sanders complains, based on the United States (3) and Texas Constitutions, (4) the trial court acted to
deny Sanders his basic constitutional protections against compelled testimony.

 We disagree with Sanders's view of the record. We find that rather than commenting on
Sanders's failure to testify, the trial court simply was referencing evidence presented by one of the
State's witnesses. 

 Early in the hearing, Sanders's community supervision officer, Nancy Scruggs, testified that
she had supervised Sanders for about a year and a half, that Sanders had a drug abuse problem which
impeded his ability to maintain steady employment, and that on three or four occasions, she had
discussed SAFPF with Sanders, but that "he didn't want to go to SAFPF." Scruggs went on to opine
that it was her opinion that Sanders needed intensive in-patient therapy for his addictions (as opposed
to mere counseling), noting that although he had been admitted to four different facilities offering
such counseling therapy, he had never stayed to complete any of the programs. 

 Sanders cites Carroll v. State, 42 S.W.3d 129 (Tex. Crim. App. 2001), to support his
argument. Sanders is correct that Carroll held that a defendant has a Fifth Amendment right against
self-incrimination at sentencing and that in that case, the trial court erred by instructing Carroll to
the contrary and then considering Carroll's invocation of that right against her when determining her
punishment. Id. at 133. However, the factual underpinnings of that case were substantially different
from those at Sanders's adjudication hearing. Carroll pled guilty and testified at the guilt/innocence
phase of trial that the State's allegations were true. At a later punishment hearing, the trial court told
Carroll's attorney that should Carroll avail herself of her right against self-incrimination, the court
would consider that invocation as a circumstance against her when determining her punishment. 
Conversely, the trial court's statement here reflected evidence which had been adduced at the
hearing: that Sanders had told his supervision officer he did not want to go to a SAFPF and that
Sanders had failed on four other occasions to complete in-patient treatment programs. Cf. Cruz v.
State, 225 S.W.3d 546, 549-50 (Tex. Crim. App. 2007) (prosecutor's closing jury arguments referred
to defendant's own written statement which had been admitted into evidence and was, therefore, not
a comment on defendant's failure to testify); Garcia v. State, 126 S.W.3d 921, 924 (Tex. Crim. App.
2004) (when defendant makes a statement which is admitted into evidence, the State's references to
statement and comparison between the statement and other evidence collected is not a comment on
defendant's failure to testify or his right to remain silent).

 The trial court's statements here were not a comment on Sanders's failure to testify. The trial
court merely made reference to testimony which had been presented regarding Sanders's lack of
interest in entering a SAFPF; nothing in his counsel's arguments or statements to the trial court
indicated Sanders wanted to be considered for such a program. We overrule Sanders's points of
error. 

 We affirm the judgment.




 Bailey C. Moseley

 Justice


Date Submitted: September 11, 2008

Date Decided: October 7, 2008


Do Not Publish
1. Tex. Health & Safety Code Ann. § 481.115 (Vernon 2003).
2. See Tex. Gov't Code Ann. § 493.009 (Vernon Supp. 2008).
3. See U.S. Const. amend. V.
4. See Tex. Const. art. I, § 10.



treatment provider, also interviewed J.D.S. According to Jennings, J.D.S told her his
"pawpaw had done some very bad things" like messing with his "private parts" by using his
"hands and fingers" and touching his "pee pee" and "bobo" with his "pee pee." Jennings
testified that, when J.D.S. said "bobo," she understood this to mean his "bottom."
          Based on these interviews, the State charged Sessums with one count of
aggravated sexual assault of a child and one count of indecency with a child. 
          At trial, no medical evidence or eyewitness testimony was adduced. The State's
evidence consisted of testimony of four expert witnesses and the testimony of J.D.S.'s
step-grandfather, Jim Hale.
          Sessums raises five points of error. He stated in his petition to the Texas Court of
Criminal Appeals he was not attacking the sufficiency of the evidence as to the indecency
conviction, but was relying on his remaining contentions of error. We will thus now address
those remaining contentions of error. 
Discussion
          Although sufficiency of the evidence is not at issue, we summarize the State's
evidence to provide a context for analysis.
          The indictment against Sessums for indecency with a child alleged Sessums
intentionally or knowingly, with intent to arouse or gratify his sexual desire, engaged in
sexual contact by touching part of the genitals or by touching the anus of J.D.S., a child
younger than the age of fourteen and not the spouse of the defendant. 
          Jennings testified J.D.S. told her his "pawpaw" had done "some very bad things"
including touching his "pee pee" and "bobo" with his "pawpaw's" "pee pee," and touching
his "private parts" with his "pawpaw's" hand and finger. Hamilton and Laura McAndrews,
a psychological therapist, also testified that, during their interviews with J.D.S., he revealed
that his "pawpaw" had touched his "private parts." In addition to this testimony, Hale,
J.D.S.'s step-grandfather, testified that:
[Hale]: . . . I was hooking up to do my dialysis and I asked [J.D.S.] to
sit down in peepaw's recliner and he hung his head like this and he said, "I
can't, peepaw," and I said why, and he said, "my bobo is sore." I said what,
"do you mean your bobo is sore." And he hung his head again and he said,
"pawpaw's been playing with it."
 
[Prosecutor]: Who did you understand him to me [sic] by pawpaw?
 
[Hale]: Larry Don Sessums, Sr.
 
[Prosecutor]: When he told you that, what was your reaction?
 
[Hale]: Very upset and beet red.
 
[Prosecutor]: What do you understand him to mean when he told you
that?
 
[Hale]: In my own mind, I drew a conclusion that he had been
messing with his bobo. 
 
[Prosecutor]: As in spanking him or what?
 
[Hale]: No.
 
[Prosecutor]: Was it clearly something other than spanking?
 
[Hale]: Yes.
 
[Prosecutor]: What was it clear to you that it was?
 
[Hale]: In my own words? In my own words, I think he was molesting
the child. 

          In the prior appeal, the State argued that Hale's testimony about a "sore bobo" and
a belief that J.D.S. was molested, combined with the testimony of Jennings, Hamilton, and
McAndrews that Sessums touched J.D.S.'s "private parts" was legally sufficient evidence
on the issue of penetration. We concluded this constituted no evidence of penetration. 
The Texas Court of Criminal Appeals denied petition on the State's request to address that
ruling; thus, in that respect, our opinion is now final.
          There is evidence Sessums touched J.D.S.'s "private parts" and "bobo," but the
State offered no evidence specifically defining these nontechnical terms. Although
Jennings testified that, when J.D.S. said "bobo," she understood him to be referring to his
"bottom," no evidence was adduced indicating he was specifically referring to his anus. 
Without conjecture and speculation, we cannot know to what J.D.S. was referring when he
used the terms "bobo," "pee pee," and "private parts."
          Moreover, Hale's testimony that J.D.S. had a "sore bobo" does not necessarily
equate to a reference to a sore anus.
Ineffective Assistance of Counsel
          In his first and fifth points of error, Sessums contends he received ineffective
assistance of counsel. He specifically argues counsel was ineffective because he did not
object to (1) expert testimony about J.D.S.'s credibility, (2) improper bolstering, and
(3) hearsay. Sessums argues that these failures to object prejudiced him because he
received a twenty-year sentence in a case with no physical evidence, no eyewitnesses,
and no testimony from the victim. 
          The standard of testing claims of ineffective assistance of counsel is set out in
Strickland v. Washington, 466 U.S. 668 (1984), and adopted for Texas constitutional
claims in Hernandez v. State, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986). To meet this
burden, an appellant must prove that his or her attorney's representation fell below the
standard of prevailing professional norms and that there is a reasonable probability that,
but for the attorney's deficiency, the result of the trial would have been different. Tong v.
State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). 
          Our review of counsel's representation is highly deferential; we indulge a strong
presumption counsel's conduct falls within a wide range of reasonable representation. 
Strickland, 466 U.S. at 689; Tong, 25 S.W.3d at 712. This Court will not second-guess
through hindsight the strategy of counsel at trial, nor will the fact that another attorney
might have pursued a different course support a finding of ineffectiveness. Blott v. State,
588 S.W.2d 588, 592 (Tex. Crim. App. 1979). That another attorney, including appellant's
counsel on appeal, might have pursued a different course of action does not necessarily
indicate ineffective assistance. Harner v. State, 997 S.W.2d 695, 704 (Tex.
App.—Texarkana 1999, no pet.). Any allegation of ineffectiveness must be firmly founded
in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. 
Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).
          We further recognize that the Texas Court of Criminal Appeals has held that, under
normal circumstances, the record on direct appeal will not be sufficient to show that
counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that counsel's conduct was reasonable and
professional. Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). In addressing this
reality, the court has explained that appellate courts can rarely decide the issue of
ineffective assistance of counsel because the record almost never speaks to the strategic
reasons trial counsel may have considered. The proper procedure for raising this claim is
therefore almost always habeas corpus. Aldrich v. State, 104 S.W.3d 890, 896 (Tex. Crim.
App. 2003); Freeman v. State, No. 2156-01, 2003 WL 22510582 (Tex. Crim. App. Nov. 5,
2003). Nevertheless, some claims may be disposed of on direct appeal where "trial
counsel's ineffectiveness is so apparent from the record." Massaro v. United States, 538
U.S. 500 (2003); Freeman, 2003 WL 22510582, at *1.
          In each instance of the complained-of testimony, Eddie Waggoner, expert
psychologist or psychiatrist, Hamilton, CPS investigator, Jennings, psychological therapist,
McAndrews, psychological therapist, trial counsel had to choose whether to object to expert
testimony concerning the truthfulness of the victim. Counsel did not object to any of the
testimony. Counsel on appeal argues this is blatantly ineffective and is so utterly
unsupportable and harmful that these errors require reversal. 
          Sessums correctly states that expert testimony that a particular witness is truthful
is absolutely inadmissible under Rule 702. See Tex. R. Evid. 702; Yount v. State, 872
S.W.2d 706, 711 (Tex. Crim. App. 1993); see also Schutz v. State, 957 S.W.2d 52, 59
(Tex. Crim. App. 1997). Behind this bald statement, however, courts have held that an
expert's testimony that a child did not exhibit the traits of manipulation is not a direct
comment on the truth of the child's allegations and thus is admissible. See Schutz, 957
S.W.3d at 73. Therefore, while an expert is not allowed to directly comment on a
complainant's "truthfulness," an expert may testify to behaviors and traits that might be
indicia of manipulation. Id. 
          It has also been held that a court may admit expert testimony that a child exhibits
behavioral characteristics that have been empirically shown to be common among children
who have been abused as substantive evidence under Rule 702. Perez v. State, 113
S.W.3d 819, 832 (Tex. App.—Austin 2003, pet. ref'd); Hitt v. State, 53 S.W.3d 697, 707
(Tex. App.—Austin 2001, pet. ref'd). 
Application to these facts
          The expert testimony in this case does substantially more than show that the child
shows no indicia of untruthfulness or describe characteristics common among sexually
abused children. 
The experts
          Waggoner was asked what factors he used to determine if a child was "telling the
truth." After describing the factors for truthfulness, the witness was asked, "How does [the
victim] fit in those factors?" Waggoner then testified the victim exhibited such factors. 
          Hamilton was asked what factors he looked at to tell if a child was telling the truth. 
He then set out those factors. He was then, as above, asked how this particular child fit
those factors, and thus whether he believed this child was being truthful in his actions. 
Hamilton finally testified this child was one of the two percent in which he found a reason
to believe the child and therefore referred the case for prosecution. 
          Jennings testified she looked at specific factors to determine whether the child was
credible, and then was asked how this child fit those factors. She did not testify this child
was truthful, but did specify how this child fit into certain behaviors typical for children who
had experienced sexual abuse (such as blaming himself or herself, or feeling guilty).
          McAndrews was asked whether she used methods to determine whether a child was
telling the truth, and focused her testimony on the consistency of the child's testimony. 
She then testified that his behavior had been consistent all the way through and that this
was a "pretty good indication that he's telling the truth." 
          The witnesses here were asked to explain and then to comment directly on the
factors they used in determining if this child was telling the truth. We have previously held
that testimony regarding the factors for truthfulness observed by the experts directly
comment as to the truthfulness of the child. As such, it does not assist the jury and is
inadmissible. Tex. R. Evid. 702; Edwards v. State, 107 S.W.3d 107, 116 (Tex.
App.—Texarkana 2003, pet. ref'd); Wilson v. State, 90 S.W.3d 391, 393 (Tex.
App.—Dallas 2002, no pet.) (also finding court erred by allowing testimony about
percentage of children who lie about being sexually assaulted).
          The observations made by the experts in their testimony in this case are all of the
type that can and should be judged and determined by a jury without the help of an expert. 
In addition, their final conclusions—that the child was being truthful—are clearly
inadmissible. 
          Further, as pointed out by Sessums, in closing arguments the State specifically
discussed (without objection) that the child must not be a liar, because he was able to
convince all four of these experts he was telling the truth.
He didn't fool all those people. I brought you a bunch of people with years
of experience. Every one of them said the kid's telling the truth, he done it. 
You have got to find that kid is a liar and all those people are fools and don't
know what they are doing in order to find him not guilty. 

          In this case, we find ourselves reviewing the activities of trial counsel in failing to
object to clearly and unquestionably objectionable testimony of the most outrageous and
destructive type. There is no conceivable strategy or tactic that would justify allowing this
testimony in front of a jury. 
          The Dallas Court of Appeals addressed this same problem over ten years ago in
Miller v. State, 757 S.W.2d 880, 884 (Tex. App.—Dallas 1988, pet. ref'd). In that opinion,
the court concluded that failing to object to the "extensive, inadmissible testimony
concerning the only real issue at trial—complainant's credibility" was deficient and resulted
in denying the appellant effective assistance of counsel. We find ourselves in agreement
with that reasoning. 
          Thus, we find counsel's performance to be constitutionally inadequate. The
remaining question is that of harm. The entire issue before this jury was whether this
defendant had sexually abused the victim. In reference to this defendant, the only
testimony was about statements made by the victim. Thus, the question of whether the
victim was truthful was the ultimate question before the jury. The jury found the defendant
guilty and then assessed the maximum punishment. In light of these factors, as in Miller,
we must likewise agree there is a reasonable probability that, but for counsel's error in
failing to object to extensive, inadmissible, and critical testimony, the result of the
proceeding would have been different.
Bolstering
          Sessums also contends the experts' testimony constituted improper bolstering of
the testimony and statements made by the child victim. Bolstering occurs when the sole
purpose of testimony is to enhance the credibility of another witness without adding
anything to the proof of a relevant fact. Morales v. State, 2 S.W.3d 487, 488 (Tex.
App.—Texarkana 1999, pet. ref'd). Counsel did object at several points, as set out by the
appellant's brief, that the experts' testimony was speculation. That did not preserve the
present contention for our review. For a contention to be raised on appeal, it must have
been raised at trial by objection. Error is not preserved for review if it varies from the
objection. Ibarra v. State, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999). Accordingly, this
argument is not before the Court for review. 
 
          Under this same point of error, counsel also argues the trial court erred by admitting,
over his hearsay objection, a letter written by Jennings to the County Attorney's office. We
use an abuse of discretion standard when reviewing the trial court's decision to admit
evidence. Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002); Burden v. State,
55 S.W.3d 608, 615 (Tex. Crim. App. 2001). An appellate court will not reverse a trial
court's ruling unless that ruling falls outside the zone of reasonable disagreement. Torres,
71 S.W.3d at 760; Burden, 55 S.W.3d at 615.
          The letter was written to the prosecutor and was a summary of the treatment given
to J.D.S. The State first argues the letter was admissible as a business record under Tex.
R. Evid. 803(6). The record indicates it was written in preparation for trial rather than in the
regular course of Jennings' business. A letter written in preparation for litigation is not
qualified as a business record under Rule 803(6). See Freeman v. Am. Motorists Ins. Co.,
53 S.W.3d 710, 714–15 (Tex. App.—Houston [1st Dist.] 2001, no pet.). 
          The State also argues the letter qualified as a record of medical diagnosis and was
thus admissible under Tex. R. Evid. 803(4). Jennings has a master's degree in counseling
psychology, is licensed by the Texas State Board of Examiners of Psychology, and was
treating J.D.S. Under the meaning of the rule, she was the type of medical professional
to which a statement for the purpose of medical treatment or diagnosis may be made. 
Thus, we conclude the admission of the letter was, at the least, within the zone of
reasonable disagreement and not an abuse of discretion. The contention of error is
overruled.
Testimony about Victim's Prognosis
          Sessums further contends that the testimony by Jennings about the child's long-term prognosis was not relevant and that the court erred in admitting it. See Tex. R. Evid.
401. Sessums argues that, because it was undisputed J.D.S. had been sexually abused
by at least one person other than he, testimony about his prognosis and future treatment
was not probative on the matter of Sessums' guilt. 
          In support of this position, Sessums directs the Court to Brown v. State, 757 S.W.2d
739 (Tex. Crim. App. 1988). Brown involved a prosecution for rape. In Brown, the rape
itself was not disputed and the only issue was the validity of the defendant's alibi. Id. at
740. The trial court admitted evidence of the victim's two suicide attempts, weight gain, job
loss, fear of being outside, and loss of confidence, all of which occurred in the eight months
between the rape and the trial. The court of appeals affirmed the admission, and the
Texas Court of Criminal Appeals reversed, concluding that the evidence of the victim's
emotional difficulty was irrelevant as to the defendant's alibi—the only issue in the case. 
See id. at 741. 
          In reviewing relevance, the Texas Court of Criminal Appeals concluded, in line with
the language of the rule, that for an item to be relevant, it must logically increase one's
knowledge and enhance the likelihood of ascertaining the truth about a fact at issue. Id.
at 740.
          In this case, the fact at issue was whether Sessums—in addition to other
abusers—also abused J.D.S. The evidence in dispute was testimony about J.D.S.'s
prognosis, treatment, and injuries. Our task is to determine if, under the abuse of
discretion guidelines set out above, the trial court could conclude that this evidence either
logically enhances or increases the likelihood of ascertaining the truth about whether
Sessums abused J.D.S. 
          We conclude that the evidence about the extent of J.D.S.'s trauma, injuries, and his
prognosis is probative circumstantial evidence that tends to show J.D.S. was abused by
more than one person. Therefore, it logically increases the possibility that Sessums
abused J.D.S., and the court's ruling admitting the evidence was not outside the zone of
reasonable disagreement. The contention of error is overruled.
 

Conclusion
          Because we sustain Sessums' contention he received ineffective assistance of
counsel at trial, we reverse the judgment of the trial court and remand the case for a new
trial on the indecency with a child charge.



                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      February 4, 2004
Date Decided:         February 26, 2004

Publish